## GAYLE vs. BANCROFT'S ADMINISTRATOR.

1. If plaintiff in execution dies, pending a trial of the right of property under the statute, the proceeding may be revived in the name of his personal representative.

2. When the affidavit is made by an agent of the claimant, in which, whether through accident or design, the christian name of the plaintiff in execution is incorrectly stated, the claimant cannot take advantage of the error by declining to join in an issue with the plaintiff in execution, when the error is apparent from an inspection of the bond, the execution and the endorsement thereon, which, for this purpose, may be regarded as parts of one transaction; but the court may compel him to join in an issue, or suffer the consequences of a default.

3. When the claim suit has been pending for several years, and a judgment has been rendered against the claimant, which is reversed on error in the Appellate Court, the claimant is estopped by the record from disclaiming; if he has been really ignorant of the proceedings carried on in his name, and if his remedy is by disclaimer, the court is not bound to notice his disclaimer, unless he also avers his ignorance of the previous pendency of the suit, and the want of authority on the part of the attorney who had appeared in his name.

4. A motion to quash the bond, when made at the trial by the obligors after the pendency of the suit for several years, is addressed entirely to the discretion of the court.

5. So also, it is discretionary with the court, to allow an amendment of the title of the case, as prefixed to the issue, by adding the name of another defendant in execution, so as to make it correspond with the execution, after the trial has been commenced.

6. The execution is competent evidence for the plaintiff on the trial of the claim suit; and the admission of the affidavit and bond is not an error for which the judgment will be reversed, although the affidavit was made by an agent, and the claimant is not one of the obligors in the bond.

7. The declarations of the defendant in execution, in whose possession the property levied on is found, when made at the time of the levy, are competent evidence to show the nature or character of his possession; and when the record does not show what his declarations were, the Appellate Court will not presume that any injury was done to the claimant by allowing a witness to be asked, and to answer, what the defendant said at the time of the levy as to his possession.

ERROR to the Circuit Court of Mobile.
Tried before the Hon. LYMAN GIBBONS.

TRIAL OF THE RIGHT OF PROERRTY in certain slaves, between Richard W. Gayle, as claimant, and George Bancroft, plaintiff in execution. Pending the suit, the plaintiff in ex-

ecution died, and the action was revived in the name of his administrator, Charles Bancroft, against the objection of the claimant.

Before proceeding with the trial, and during the progress of the trial, the claimant made several objections to the rulings of the court, all of which will be readily understood from the statement of facts contained in the opinion, and the assignments of error, which are as follows, viz:

1. The court erred, in refusing to enter a judgment abating the suit, on the suggestion of the death of George Bancroft, the plaintiff in execution;

2. In allowing the suit to be revived in the name of Charles Bancroft, administrator of George Bancroft, deceased;

3. In compelling R. W. Gayle to make up an issue to try the right of property in this case;

4. In refusing to quash the bond for the trial of the right of property, on the motion of R. W. Gayle;

5. In refusing to allow R. W. Gayle to enter a disclaimer, or put in issue the fact of his claiming the property, as shown in the bill of exceptions;

6. In requiring R. W. Gayle to join in the issue tendered by the plaintiff;

7. In admitting the evidence of George Huggins, as to the declarations of Billups Gayle, as shown in the bill of exceptions;

8. In allowing the issue to be amended, after the trial had been gone into, and evidence been offered, as shown in the bill of exceptions;

9. In allowing the execution, affidavit and bond for the trial of the right of property, to be read in evidence to the jury;

10. In admitting the evidence of Huggins, on the hearing of the motion, made by the securities, to quash the bond;

11. In refusing to quash the bond, on the motion of John Gayle and Daniel M. Riggs, securities.

HOPKINS & JONES, for plaintiff in error:

1. This is a summary proceeding given by statute. The statute makes no provision for its surviving, or being revived. In the absence of any such provision, the well settled law is,

that the case abates on the death of either party, and cannot be revived. Clay's Dig. 211 § 52; ib. 213 §§ 62, 64. The summary remedy is held to abate in cases of motions in favor of Banks. Andrews' Adm'r v. Branch Bank at Mobile, 10 Ala. 375; Murphy's Adm'r v. The Same, 5 ib. 423; Alexander's Adm'r v. Branch Bank at Montgomery, 5 ib. 465. Nor in a motion against a constable,—Logan, Adm'r v. Barclay, 3 Ala. 362; nor in a case of statutory distress for rent. Dumes v. McLoskey, 5 ib. 239. See also King, Adm'r v. Armstrong, 15 ib. 294. If, in all the above cases, the summary remedy which comes in lieu of *assumpsit* or debt, common law remedies which would survive, does not survive, *a fortiori*, it should not survive in this case, in which the summary remedy comes in lieu of trespass or case, common law remedies which do not survive. Clay's Dig. 313 § 1; ib. 314 § 6; 1 Saunders' Rep. 216 a, note 1; ib. 217, note d; 8 Porter 181; 5 Ala. 369.

2. The court had no jurisdiction of this case. It could not acquire jurisdiction without an affidavit of claim of the property levied on under this execution. There was no such claim made. The affidavit claims property levied on under an execution in favor of Charles Bancroft.

3. Richard W. Gayle never authorized or sanctioned the act of A. J. Gayle. There is nothing to show that A. J. Gayle was his agent. He certainly should have been allowed to disclaim, or to put in issue the fact of his having made a claim.

4. The issue tendered was improper, and shows that the case should have been abated. The issue should be, the plaintiff (Charles Bancroft) avers that the property is liable to his execution. P. & M. Bank v. Willis, 5 Ala. 770. Now, Charles Bancroft had no execution on this judgment, and never had one. He could not have one without reviving the judgment. How could an execution be issued now on this judgment? In whose name? How can the clerk or sheriff proceed on this judgment of condemnation?

5. The admission of the evidence of Huggins, as to the declarations of Billups Gayle, was obviously erroneous.

6. The court had no right, after the trial had been commenced, to alter the issue, so as to make it fit the plaintiff's evidence.

7. The admission in evidence of the execution, bond and affidavit, was illegal.

8. The bond was fatally defective. It is not in conformity with the statute. It is essentially variant from the execution. It is blank as to the most material facts. Not being good as a statutory bond, it should have been quashed, either on the motion of R. W. Gayle, or certainly that of his securities. Seawell v. Franklin, 2 Porter 493; King v. Walton, 3 ib. 289; Van Cleave v. Haworth, 5 Ala. 188; ib. 618; Moffit & Watson v. Branch Bank at Mobile, 7 ib. 593; Nicholson v. Barker, 15 ib. 353.

C. W. RAPIER, contra :

A proceeding under the statute to try the right of property, is a suit; and, in our law, it is not one] of the class of suits which cannot be revived. Clay's Dig. 313 § 1. In a summary proceeding against a Bank debtor or a sheriff, the reason why the proceeding cannot be revived against the defendant's administrator, does not apply to cases of the trial of the right of property. A summary proceeding against a Bank debtor cannot be revived against his administrator, because the statute does not authorize it to be commenced against such administrator. King, Adm'r v. Armstrong, 14 Ala. 293. But, manifestly, a trial of the right of property may be initiated by the personal representative of a claimant to the property levied on, or by the representative of a judgment creditor. But, if there was an irregularity in making the administrator a party, can the claimant take advantage of it? 8 Por. 564.

The disclaimer tendered by R. W. Gayle, was an attempt to evade the true issue, and yet to have the benefit of such an issue; it was therefore properly rejected by the court. It was left optionary with him, to join in the issue tendered; nor was it error, in the event of his refusing to join in the issue, to allow the plaintiff to proceed ex parte. Digest 212 § 54; 5 Ala. 770.

The motion to quash the bond was correctly overruled. The discrepancy between the execution in the record, and that recited in the bond, is not so great, but that it can be identified as the same execution. 7 Ala. 105; 5 ib. 618.

Obvious omissions in a bond may be supplied, to carry into effect the intention of the parties. Gully v. Gully, 1 Hawks' R. 20; Cook v. Graham, 3 Cranch 229; Minor et al. v. Merchants' Bank of Alexandria, 1 Peters 46; 8 Ala. 481.

The declarations of a person in respect to property of which he is in possession, are admissible evidence as a part of the res gestæ. 4 Ala. 40; 1 ib. 344.

PHELAN, J.—If plaintiff in execution dies pending a trial of the right of property under the statute, can the proceeding be revived in the name of his executor or administrator? It would seem strange, that during the forty years this statute has been in force, and the great number of trials that have been had under it, this question has never before been presented for decision.

The question must be resolved by bringing this proceeding to the test of general principles, and the application of our statute respecting the abatement and revival of suits. That statute is in these words: "When any suit shall be depending in any court in this State, and either of the parties shall die before final judgment, the executor or administrator of such deceased, who was plaintiff, petitioner, or defendant, shall have full power, (in case the cause of action by law survive,) to prosecute or defend such action until final judgment."

1. Is the statutory proceeding to try the right to property levied on by execution a suit, or action, within the meaning of this statute? This question would seem to be settled affirmatively by several decisions.

In P. & M. Bank of Mobile v. Borland, 5 Ala. 531, the plaintiffs were required to elect, under the rule of court, whether they would proceed with their bill in chancery, or trial of the right of property under the statute, in respect to a claim to certain slaves. It was objected, that the trial of the right of property was not "a suit at law," such as would compel the plaintiffs to make an election. The court say : " The proceeding on the part of the plaintiff may be regarded as a statutory action, in which the leading process is the execution; the levy being made, and affidavit and bond being filed by the claimant, the court shall require the parties con-

cerned to make up an issue under such rules as they may adopt, so as to try the right of property before a jury at the same term," &c. We then consider the proceeding in the court below as " a suit at law, within the fair interpretation of the rule."

In Jacott et al. v. Hobson, 11 Ala. 434, the question arose upon the right to demand security for costs of a non-resident plaintiff in execution, under the statute which gives to defendants in " every action at common law, or suit in chancery," the right to require security for costs of non-resident plaintiffs. The court cite with approbation the case in 5 Ala., *supra*, and add: " The citation from 5 Ala. establishes, that it (trial of right of property) was not only a suit at law within the chancery rule, but the reasoning employed proves, that it is a suit within the general understanding of the term; and the plaintiff is the actor."

On principle, an action or suit is the right to prosecute to judgment a lawful claim or demand. 3 Coke Litt. (Thomas) 348. Its ordinary incidents are: 1. Process; 2. Pleadings; 3. Issue; 4. Trial; 5. Judgment and its incidents; 6. Appeal or writ of error. A trial of the right of property under our statute has all these; and hence, upon reason and authority, we may decide, that it falls thus far within the statute respecting the revival of suits or actions.

2. Does the cause of action survive? What is the cause of action in this statutory proceeding? I take it to be the right to have certain specific personal property condemned, by the judgment of a competent court, to the satisfaction of a certain judgment before rendered; a special right incident to the general right to levy upon and sell the property of a defendant to a judgment; and made special by the interposition of a claim under oath of a third person to specific chattels. The right to this statutory proceeding being incident to the general right to levy, to ascertain if it survives, we must look to the nature of the general right. It is needless to argue, that the right to judgments with all their incidents survives to executors and administrators, and the judgments vest in them as assets. Judgments require to be revived sometimes by *scire facias*; and sometimes, as when execution has been placed in the sheriff's hands before the death of the plaintiff,

so as to create a lien, they vest in the executor or adminis-
trator immediately upon the grant of letters. No one will
controvert this. If the general right to levy execution, either
with or without *scire facias*, survive to the executor, and he
be impeded in the exercise of this right by a claim under
oath, then the specific right to have that particular chattel
which is claimed condemned to the satisfaction of the judg-
ment, (if in fact it be liable,) results as matter of course. In
other words, an executor may have execution in his own
name levied on property of the defendant, and thus originate
a trial of the right of property with himself, if it be claimed.
This is every day practice, and it proves, that when plaintiff
in execution dies pending a trial of the right of property, the
cause of action survives to his executor.

But in every case of trial of the right of property on an
execution levied in the lifetime of the original plaintiff, there
is a lien, which enures to the benefit of the executor if plaintiff
dies, immediately upon grant of letters, and without *scire fa-
cias*. If upon an execution so levied the money be made,
the executor is entitled to demand and receive it, without any
revival of the judgment. Toller on Ex. 441; Collingsworth
v. Horn, 4 S. & P.; Boyd v. Dennis, 6 Ala. If the executor
succeeds presently, and without *scire facias*, to the right to
receive the money in such a case, would it not seem that he
succeeds, in like manner, to the right to proceed with an ac-
tion already begun, the object of which is to make the money
by execution?

We have carefully considered the argument of plaintiff in
error, that this is a statutory remedy unknown to the com-
mon law, and therefore not to be extended beyond the ex-
press letter of the statute, and the cases cited from 3 Ala., 5
Ala. and elsewhere. It would protract the opinion unneces-
sarily to state our reasons, but we do not consider that any
of those cases, or the principles on which they rest, reach the
case at bar.

It is to be observed, also, that it has been decided, that there
are statutory proceedings which can be revived, when the
statute does not expressly authorize it. Sankey's Ex'rs v.
Sankey's Heirs, 6 Ala., was a citation in the Orphans' Court
by husband and wife, to the executor of her former husband,

to make final settlement; a strictly statutory proceeding. The wife died, and the proceeding was revived in the name of the husband, as administrator, which was assigned for error. Judge Ormond says: "It cannot be doubted, that the intention of the legislature was, that no action or suit should abate where the cause of action survived. That it was intended that the act should extend beyond suits commenced in the ordinary way, appears from the employment of the words, plaintiff, petitioner or defendant." Clay's Dig. 313.

I happen casually to have noticed the fact, that in Hadden's Ex'r v. Powell, 17 Ala. 318, which was a trial of the right of property growing out of the levy of an attachment, the action was revived in the name of the executor of the original·plaintiff without objection. That case has been here the second time, and the point has never been made, that such an action could not be revived. I refer to this, in connection with the fact that this question has never been raised before, as some indication of the view taken by the profession upon the right to revive under our statute in the case of a claim suit.

It is proper, in a question of this importance, to consider for a moment the consequences likely to result from holding that this proceeding cannot be revived. The levy gives a lien. This lien is not discharged even when the claimant gives bond; Mills v. Williams, 2 S. & P. 390; and the property is said to be in the custody of the law, so that another execution cannot be levied on it. 8 Ala. 357. Now, if the death of plaintiff in execution abates the suit, and it cannot be revived, what becomes of the property? Is it still in the custody of the law? If so, the custody of the law, which ought ever to be secure and certain, is likely to prove to the plaintiff a barren custody. The property was delivered to claimant when he gave bond. That bond was conditioned to return the property, if found subject to plaintiff's execution. But plaintiff has died; this proceeding does not survive, but finally abates; the property has died, or been consumed, or removed beyond the jurisdiction, and the obligors on the bond can never be made liable, because no breach of its condition is possible without a trial. Such are the consequences that must follow a decision, that this is a suit which does not

survive. They tend, so far as such an argument is allowable, to repel the construction which would lead to them. The danger to the plaintiff from permitting the claimant to gain possession of the property, by giving bond, was seen, and was intended to be guarded against, in some respects, by the provision which declares, that the claimant shall not dismiss or otherwise discontinue his claim without the consent of the plaintiff.

Upon the whole, we are satisfied, both upon reason and authority, that a trial of the right of property is a suit or action which can be revived. We pass on to the other questions, briefly premising the facts on which they rest.

The affidavit in this case is made by Andrew J. Gayle, who describes himself as agent and attorney for Richard W. Gayle. In this character, he "on oath saith, that the negroes, Jenny and Rose, and her child, Daphne, who have been levied on by the sheriff of Mobile county, to satisfy an execution in favor of Charles Bancroft, are the property of Richard W. Gayle, as appears by a deed duly executed by Daniel M. Riggs," &c. This affidavit was sworn to and subscribed 6th of May, 1843.

The execution levied on the property is an execution in favor of George Bancroft against Billups Gayle and William Bower, late co-partners, and Duke Goodman, their security to writ of error bond, for $792\frac{83}{100}$ damages, $79\frac{28}{100}$ the ten per cent. damages awarded by the Supreme Court for delay, and the sum of $35\frac{16}{100}$ costs. This was issued the 6th of May, 1843, by the clerk of the County Court of Mobile, and contained at bottom a memorandum signed by him saying, "Compute interest from 9th March, 1839."

By endorsement of the sheriff of Mobile county, G. Huggins, it appears this execution was received by him the 6th of May, 1843, and the same day was levied on "one negro woman named Jenny, and one called Rose, and her child called Daphne;" and on the same day, "Andrew J. Gayle made oath and claimed said negroes as the property of Richard W. Gayle, and gave bond for the trial of the right of property in said negroes, which bond is herewith returned." &c.

The bond contains in the body, as the obligors, the names of Andrew J. Gayle, John Gayle and Daniel M. Riggs, with-

Gayle v. Bancroft's Adm'r.

out designating any one as principal, or any one as surety, and is signed by them in the same manner, bearing date the 6th of May, 1843. Neither does Andrew J. Gayle describe or sign himself as the agent of Richard W. Gayle. The condition of the bond sets out an execution in favor of George Bancroft against Billups Gayle and William Bower, late copartners, and Duke Goodman, their surety, &c., for $792$\frac{2.5}{100}$ damages, (omitting any mention of the $79$\frac{2.8}{100}$ for damages in Supreme Court,) with interest from 9th of March, 1839, and $35$\frac{15}{100}$ costs, which was issued by the clerk of the County Court of Mobile the 6th of May, 1843, and was delivered same day to the sheriff, and by him levied same day on Jenny and Rose, and her child, Daphne, as the property of Billups Gayle, "which is now claimed" (these are the words of the instrument, with the blanks,) "as the property by the above bounden —— as —— property, under the oath of ——. Now, therefore, the condition of the beforegoing obligation is such, that if the said —— shall return the said specific property, levied on as aforesaid, if the same shall be found liable to the said execution of the said George Bancroft, and shall pay, &c., then, &c., to be void."

1. The plaintiff in error, Richard W. Gayle, objected to joining in an issue below to try the right to the property levied on under the execution in favor of George Bancroft, contending that the affidavit did not show that he had made claim to any such. The court decided, that it could not compel him to join in an issue, but, that if he declined to do so, it would allow the plaintiff in execution to proceed as in case of default.

2. He also tendered an issue, that he did not claim the property levied on, nor authorize any one else to do so for him. This the court refused to receive.

3. Before tendering this issue, he moved to quash the bond; which motion the court declined to hear at that time.

4. After these proceedings, and reserving his objections to the rulings of the court, he joined in an issue tendered in these words:

"Charles Bancroft, Adm'r of George Bancroft,

v.

Gayle & Bower and Duke Goodman, defendants, and Richard W. Gayle, claimant.

"The plaintiff avers, that the negro slaves levied on by the sheriff of Mobile county, to satisfy the execution in this case, are liable to said execution; the said negroes named Jenny and Rose, and her child, Daphne."

1. Upon looking at the affidavit, the execution, the endorsement on the execution, and the bond for the trial of the right of property, there cannot be a reasonable doubt that the name "Charles" was inserted in the affidavit erroneously. That such an error, whether made from oversight or design, when it is manifest from the face of the proceedings, should be allowed to overturn all the rights which appertain to the plaintiff in execution dependent on it, and secure to the claimant without merit all the advantages he gains by making claim to property, would not be consistent with reason or justice. The execution, it appears, was in fact in favor of George Bancroft; by virtue of this the sheriff took the slaves into his possession; by force of the affidavit which was made, and the bond which was given, these slaves were delivered up. But the affidavit, looking to that alone, says, the slaves were levied upon by an execution in favor of Charles Bancroft, and for this reason the claimant asks that he may not be compelled to join in an issue which depends on an execution in favor of George Bancroft. This the court refuses, and properly. The error is manifest, whether we look to the execution, the endorsement to the execution, or the bond, which for this purpose may be regarded as parts of one transaction; and the court properly decided to require the party to make up an issue or suffer the consquences of a default.

2. A claimant is not allowed by the statute to dismiss or otherwise discontinue his claim without the consent of the plaintiff. The reason for this is obvious; he has gained important advantages by making claim, and he will not be permitted to turn this to the prejudice of the other party, by impairing the right of such party to put things in train to recover on the bond.

But cannot a man whose name has been used against his consent, disclaim all connection with the proceeding? What would be the rights of a party in this regard, who should take the necessary steps to enter such a disclaimer in proper time, we

do not feel called upon to decide. The record in this case shows, that this proceeding has been pending in the court below against Richard W. Gayle, as claimant, for several years. There was once a judgment rendered in it against this party, as claimant, and others, which was brought to this court and reversed. 17 Ala. 351. In the entry of judgment, the case is stated as "George Bancroft, plaintiff in execution vs. Gayle and Bower, defendants in execution; Richard W. Gayle, claimant;" and the record recites that the "parties came by their attorneys." After all this the claimant will not be allowed to disclaim. He is estopped by the record from doing so. From that it appears, that he has been conducting an active defence for years, and it is too late now for him to say that he is not a party. The court must trust to its own officers. If an attorney has appeared for him without authority, and he has been ignorant of the proceeding up to the time that he offers to disclaim, even if the remedy is to be found in an application to the court to enter a disclaimer, the court would not be bound to notice such disclaimer, unless the party offering to make it would aver his ignorance of the previous pendency of the suit, and want of authority in the attorney who had appeared in his name.

3. The motion to quash the bond at this stage of the proceedings would have been entirely addressed to the discretion of the court, even if Richard W. Gayle had been a party to that bond, which, on its face, he is not.

4. It fell, in like manner, within the discretion of the court, to allow the title of the case affixed to the issue which was tendered, to be changed, by adding the name of Duke Goodman to the defendants in execution, so as to make it correspond with the execution, and this even after issue joined.

The execution, affidavit, and claim bond were read, it is said, "in evidence to the jury," and objections were made to them severally by the claimant, and overruled. As to the execution, it was competent evidence, and was therefore properly admitted. As to the affidavit of the claimant's agent to the property, it was not competent evidence, it is true; but we cannot see how the claimant could be injured by the admission of an affidavit made by another person, that certain

property belonged to him, in the trial of an issue in which that was the very point he sought to establish. So the claim bond was incompetent evidence. But the existence of the bond as a fact, or the recitals it contains, if they can have any bearing upon this issue, evidently make rather for the claimant than against him. When it clearly appears, that the party objecting could not have been injured by the incompetent or irrelevant testimony, this court will not reverse on account of its admission, as we have repeatedly held. Easley v. Dye, 14 Ala. 158; Parsons v. Boyd, 20 Ala. 112; Frierson v. Frierson, 21 Ala. 549.

The counsel for plaintiff asked Huggins, the sheriff, who levied on the property in the possession of B. Gayle, what Billups Gayle said respecting said negroes at the time of the levy? To this question the counsel for claimant excepted, but the court allowed the question to be put and answered, as the bill reads, "for the purpose of showing Billups Gayle's possession of the property, but for no other purpose." To which decision of the court, allowing the question to be put and answered, the counsel for claimant excepted. What the answer was is not given. Billups Gayle's possession was already proved. If the answer had gone to show the nature or character of that possession, the proof would have been competent and proper. 8 Ala. 650; 10 Ala. 229. In the absence of what the answer was, we cannot see that any injury was done to the claimant by allowing such a question to be put and answered. *Non constat*, but that the answer was in his favor if illegal, or it may have been entirely competent evidence.

There is no error in the record, and the judgment below is affirmed.