## Sharpe v. Orme.

### *Real Action in nature of Ejectment.*

1. *Deed; when not self proving.*—Unless a deed is properly recorded within twelve months from its date, it is not self proving under section 2154 of the Code.

2. *Acknowledgment of deed; what sufficient.*—A literal compliance with the forms prescribed by the statute, for the acknowledgment and probate of deeds, will not be exacted; it is sufficient if it fairly appears that the statute has been substantially complied with; and in determining this, the certificate or acknowledgment may be read in connection with the deed.

3. *Same; how may be proved.*—Where a grantor wrote his name to a conveyance, which was not attested, but acknowledged before a justice of the peace, the certificate of acknowledgment operates as a substitute for the attestation of a witness; and where the deed was not recorded within twelve months, the party wishing to introduce it, may, upon showing that the officer is without the jurisdiction of the court, prove his handwriting, and thereby render the deed admissible.

4. *Deed, alterations in; presumptions as to.*—Material alterations of a deed after its delivery, can be made operative only by a new attestation or acknowledgment. Where interlineations appear in the handwriting of the grantor, merely curing an imperfect description of the lands, and according with all the purposes and objects of the deed, the fair presumption is, that the interlineations were made before the acknowledgment of execution; and the burden of repelling the presumption, rests on the party asserting the contrary.

5. *Same; what alteration not sufficient to avoid.*—An innocent alteration made by the grantor, after the delivery of the deed, to cure his own inadvertence and make the instrument accord with its purposes and objects, will not divest the title which has vested by the deed.

APPEAL from Montgomery Circuit Court.

Tried before Hon. JAMES Q. SMITH.

Appellants, the heirs-at-law of Josephus Sharpe, brought their statutory real action against the appellee, Jane C. Orme, to recover certain lands. Appellants claimed title by a deed from the appellee and her husband, Thomas J. Orme, who has since died, leaving her in possession.

This deed was regular in form, and was acknowledged before a justice of the peace, whose certificate is as follows:

"State of Alabama, Montgomery County. I, G. H. Coch-

ran, a justice of the peace for the county aforesaid, do hereby certify that T. J. Orme and J. C. Orme, who is known to me, acknowledged before me, that being acquainted with the foregoing conveyance they did the same voluntarily, on the day the same bears date.

"Given under my hand this, the 7th day of May, 1867.
"G. H. COCHRAN, J. P."

Said deed was executed on the 7th day of May, 1867, and recorded on the 31st day of May, 1869.

On the trial, plaintiffs offered the deed in evidence, and "proved" that said deed and the signature thereto, purporting to be that of Thomas J. Orme, and the cancellation of the stamps and the acknowledgments, except the words, "given under my hand this, the 7th day of May, 1867. G. H. Cochran, J. P.," were all in the handwriting of Thomas J. Orme, one of the grantors.

Certain interlineations and alterations appeared on the face of said deed, which, witnesses examined as experts, testified were in different ink from the body of the deed and the acknowledgment, but in the same ink as the cancellation of the stamps, and that they were in the same handwriting as the body of the instrument, the cancellation of the stamps and the signature purporting to be that of Thomas J. Orme, one of the grantors. Said witnesses could not state as to the time when the interlineations and alterations were made, whether before or after the execution of the deed; but expressed the opinion that they were made after the body of the instrument and signatures and acknowledgment were written, because "in different ink from them, and because the alterations were written on and over the words originally written in the body of said deed."

In the deed, the lands are described as portions of section thirteen, range nineteen, and the interlineations consist of the words "six township" inserted between the words "section" and "thirteen," and the alterations changing the number of acres from "760 more or less" to "840 more or less." It was "proved" that said Thomas J. Orme had been in possession of the lands described in the complaint, for about twenty years before his death, which occurred in 1872, building houses thereon and cultivating the same; and that after the execution of said instrument, he continued to reside on said lands, cultivating and managing the same, till his death; but that he declared he was doing so as the agent of Josephus P. Sharpe, and that said Sharpe furnished some corn and other provisions to cultivate the place.

[Sharpe v. Orme.]

There was evidence tending to show that the words " Given under my hand this, the 7th day of May, 1867. G. H. Cochaan, J. P.," were in the handwriting of said Cochran, and that he had removed to the State of Texas.

The court, at the request of the defendant, in writing, charged the jury, if they believed the evidence, they must find for the defendant. To this charge plaintiffs excepted, and it is now assigned as error.

T. M. ARRINGTON, for appellants.—The interlineations in the deed, of the words " six township," and at the end of a particular description of the land, and the alterations changing the number of acres from " 760 more or less " to " 840 more or less," are of no possible consequence, intended only to supply a defective description of a small portion of the land, showing only what section and township were meant, and not attempting to convey other lands than those already described in the deed ; and *all being in the handwriting of the grantor, no question of fraud can arise.*

It is settled law that the alteration of a deed by the grantor, or with his consent, does not avoid it.—Shepard's Touch. 68 ; *Speake v. United States,* 9 Cranch, 28.

At most, the interlineations could only vitiate the deed to the extent of the land which had been misdescribed, and where a deed had been delivered and title vested in the grantee, an alteration does not undo what has been done. Even where the alteration is fraudulently intended, it is fatal to the instrument only as to the covenants or undertakings contained in it—that is to say, such parts of it as are executory.—*Kendall v. Kendall,* 12 Allen, 92 ; *Cheepman v. Whittemore,* 23 Pick. 231 ; *Lewis v. Payne,* 8 Cowen, 71.

The acknowledgment, though not in the precise language of the form set out in the Code, is in substantial compliance therewith, and that is all the law requires.—*Kelly v. Calhoun,* 5 Otto, 713.

Section 2154 of the Code provides that conveyances acknowledged, or proven according to law and recorded within twelve months from date, may be received in evidence without further proof. More than twelve months had elapsed before the recording of the deed, but it falls within the operation of the act of March 20th, 1875, p. 18C, which permitted conveyances not then recorded, to be recorded within twelve months. This deed was already recorded at the time of the passage of the act, and to re-record it would have been a vain thing—only leading to complication.

CLOPTON, HERBERT & CHAMBERS, *contra.*

BRICKELL, C. J.—1. The statutes require that *convey-ances for the alienation of lands must be written or printed on parchment or paper, and must be signed at their foot by the contracting party, or his agent having a written authority; or if he is not able to sign his name, then his name must be written for him, with the words "his mark" written against the same or over it; the execution of such conveyance must be attested by one, or where the party can not write, by two witnesses who are able to write, and who must write their names as witnesses.* Code of 1876, § 2145. The acknowledgment of execution, which is authorized by subsequent sections of the Code, oper-ates as a compliance with the requisition of attesting wit-nesses.—*Ib.* § 2144. The form of acknowledgment is pre-scribed, but if the form is not substantially complied with, the result as declared is, that the conveyance loses the privi-leges conferred by section 2154 of the Code.—*Ib.* §§ 2158–61. That section is in these words: "Conveyances of property, whether absolute or on condition, which are acknowledged or proven according to law, and recorded within twelve months from their date, may be received in evidence in any court without further proof, and if it appears to the court that the original conveyance has been lost or destroyed, or that the party offering the transcript has not the custody or control thereof, the court must receive a transcript duly certified, in the place of such original."

These enactments have placed the law in reference to the execution and proof of conveyances upon an entirely new footing in several important particulars. First, is the neces-sity of attesting witnesses, or an acknowledgment of execu-tion by the grantor, taken and certified by a proper officer. Second, the proof of the instrument by the certificate of pro-bate or acknowledgment. Third, proof of its contents and existence by a transcript from the record, when the original has been lost or destroyed. Or if the proof is to be made by one to whom the custody of the original is not imputable, then the introduction of such transcript, without accounting for the absence of the original, and without an effort to pro-duce it. In each case, authorizing the use of a copy of a copy in derogation of the common law.

The deed is not attested by a witness, and the point of contention is, whether the certificate of acknowledgment satisfies the statutory requisition, or if it is defective, can parol evidence supply the deficiencies. The certificate is very

informal, and substitutes some words for those employed in the form prescribed by the statute, and omits others. Yet, when the deed is examined in connection with the certificate, by fair legal intendment, it appears that the grantors on the day of the date of the deed, acknowledged that with knowledge of its contents, they executed it voluntarily. While courts are constrained to disapprove departures from the simple forms prescribed by the statutes—and though such departures render titles insecure and invite litigation, liberality, not strictness of construction, is the rule which has been observed. The want of substance can not be disregarded, opening a door for fraud and forgery, and by judicial legislation nullifying the statute—words can not be added to, or the equivalent of material words found in the statutory forms, dispensed with. Yet when it fairly appears that the statute has been substantially complied with, a literal compliance with the statutory form is not enacted.—4 Phil. Ev. (C. & H. notes), 462.

In *Bradford v. Dawson*, 2 Ala. 203, under a statute which required that the grantor should acknowledge, *that he signed, sealed and delivered the deed on the day and year therein mentioned to the grantee,* a certificate not stating that the grantor acknowledged that he executed the deed on the day of its date to the grantees, was deemed a substantial compliance with the statute. The court say : " The supposed defects in the certificate vanish the instant the body of the deed is examined ; for, we then ascertain that the day of the date, is the same day when the acknowledgment was made. We likewise perceive, that the deed was executed by the trustees as well as the grantor. It was not necessary that the former should have signed, or otherwise executed the deed, and certainly a defective acknowledgment by them can not prejudice the deed, when no action whatever is required on their part. It is said, however, that the body of the deed ought not to be looked at to support the probate. It seems to us, that every probate must, of necessity, be compared with the deed ; to illustrate our opinion, let the probate be supposed as precisely formal in terms, yet, if the acknowledgment was not made by the person named as the grantor, it would be clearly void. It is obvious, that the difference in the names would appear only by an inspection of the body of the deed and by comparison with the probate." The court further say : " The only general rule with respect to the construction of these certificates, when the object is to support the registration, is, that when the statute has been substantially com-

[Sharpe v. Orme.]

plied with, the rights of the parties shall not depend on strict criticism, but that any portion of the deed may be examined to give effect and meaning to a certificate which is apparently defective."

The acknowledgment and certificate in this case, is merely a substitute for an attestation by a witness, the parties to the deed, being able to write and having signed it. If it had been attested, no more than the signature of the witness would have been necessary—no affirmation by him of his knowlege of the parties, or of their identity or of their acknowledgment that with knowledge of its contents they voluntarily executed it, could be required. It can not be a proper construction of the statute, which would vitiate the instrument as a conveyance of the legal estate, *as between the parties*, because the officer before whom its execution was acknowledged, from ignorance or carelessness, imperfectly certifies the facts. The certificate is his act, and he, not the parties, speaks by it. The material fact is, that the grantors acknowledged the execution of the conveyance voluntarily, with knowledge of its contents, and whenever this can be fairly and reasonably spelled out from the certificate, the requisitions of the statute are satisfied. When this certificate is read in connection with the deed, the fact appears with certainty. The only doubt about it which can be generated, is by referring to the statutory form, and observing how far the certificate departs from its letter. Literal compliance with the form is not essential.

The deed not having been recorded within twelve months from its date, the certificate was not evidence of its execution. The privilege of proof of execution by the certificate is by the statute confined to deeds which are recorded within twelve months after their date. When the subscribing or attesting witness to a written instrument, is not within the jurisdiction of the court—when his residence is in a foreign country, or in another State, the instrument may be read in evidence, upon proof of his handwriting. The certificate of acknowledgment, operating as a substitute for the attestation of a witness, when it is shown that it is legally impossible for the party proposing to introduce the conveyance in evidence, to produce the officer making it, by reason of his residence without the jurisdiction of the court, may be proved by evidence of his handwriting, and when the evidence is given, the conveyance may be read. The admissibility of parol evidence, to supply defects in the certificate of acknowledgment, when the purpose is simply to satisfy the statutory

[Sharpe v. Orme.]

requisition *as to the execution of the instrument,* and not to impart to it the force and operation of a conveyance recorded, it is not necessary to consider, in the view we take of the certificate.

2. The interlineations apparent on the face of the deed, are not of themselves of a character to excite suspicion. They are mere completions of imperfect descriptions of parcels of the lands, and of the aggregate number of acres the deed importing a sale by description, or metes and bounds, and not by the quantity. All unfavorable presumptions against the grantee are removed by the fact, that these interlineations are in the handwriting of the grantor, Thomas J. Orme, in whom the legal estate in the lands resided. If it had been shown they were made after the delivery of the deed, the conclusion would be, that they were made by consent, and the validity of the deed would be unaffected by them, if it were not that an attestation by witnesses, or an acknowledgment of execution before a proper officer, is essential to the valid execution of a conveyance passing the legal estate in lands. Material alterations of the deed after its delivery, can be made operative only by a new attestation or acknowledgment. The point of time to which the inquiry as to the making of these interlineations should be confined, is the acknowledgment of the execution. If they were made before, or concurrently with such acknowledgment, they are parts of the deed, and as operative, as if they had been incorporated in the body of the deed in its original writing. If made subsequently, though by the grantor, with the consent of the grantee, the legal estate in the lands, the description of which they perfect, would not pass by them, without a new acknowledgment, or an attestation of the fact by a witness in the mode prescribed by the statute. These interlineations merely curing an imperfect description of the particular parcels of the lands, accord with all the purposes and objects of the conveyance, and it is but a fair presumption, their omission in the original writing of the deed was merely inadvertent. The inadvertence was corrected, so soon as it was discovered, it is also fair to presume. The legal presumption under the circumstances, is, that they were made before the acknowledgment of execution, and the burden of repelling the presumption rested on the party asserting the contrary.—3 Wash. Real Prop. 221; 1 Whar. Ev. § 629; 1 Green. Ev. § 564. The time of making the interlineations, when any evidence repelling, or tending to repel the legal presumption is given, is a question of fact the jury must determine.

[Harrell v. Mitchell.]

Though these interlineations were made subsequent to the acknowledgment of the deed, they would affect its validity, only so far as it purports to pass the title to the particular parcels of lands, the description of which is perfected by them. A fraudulent alteration of a deed by the grantee does not divest the title which has vested in him. It may preclude him from enforcing covenants of warranty found in the deed, but his estate in the lands, so far as it is vested, remains. The principle is thus stated in 1 Green. Ev. § 568: "But here also a further distinction is to be observed between deeds of conveyance and covenants; and also between covenants or agreements executed, and those which are still executory. For if the grantee of land alter or destroy his title-deed, yet his title to the land is not gone." In the note of Hare & Wallace, to *Master v. Miller*, 1 Smith, L. C. 1280, the principle is stated in the words which follow, and numerous authorities are cited in support of it: "The instrument as far as the spoliator is concerned, is from that time destroyed and extinguished; its past operation is not contractd; executed contracts evinced by it, are not rescinded; estates and titles vested by transmutation of possession, whether by common law or the statute of uses, are not divested." A fraudulent spoliation not operating a divestiture of title, it would be singular if an innocent interlineation, the act of the grantor, intended to cure his own inadvertence, and make the instrument accord with its purposes and objects, should have a larger operation.

There is no view of the case, in which the charge given can be sustained. Let the judgment be reversed, and the cause remanded.